MHN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIRST BANK AND TRUST COMPANY OF ILLINOIS, | )<br>)<br>) |
| Plaintiff, | ) Case No. 08 C 4987 |
| v. | ) Judge John A. Nordberg |
| KENNETH E. RICHARDSON and MICHAEL ANNECCA, | ) Magistrate Judge<br>) Martin C. Ashman |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before this Court is Plaintiff First Bank and Trust Company of Illinois' ("First Bank") Motion to Lift Stay. First Bank seeks to lift a stay imposed by the District Judge on May 19, 2010 on its suit against Defendants Kenneth Richardson ("Richardson") and Michael Annecca ("Annecca") (together, "the Defendants"). The Court rules on this Motion under District Judge John Nordberg's referral of it to this Court pursuant to N.D. Ill. Rule 72.1. For the reasons stated below, the Court finds that First Bank's Motion is denied.

### I. Background Facts

On or around October 10, 2006, First Bank, an Illinois corporation, issued $7,791,120 pursuant to a loan agreement to Flamingo West LLC ("Flamingo West"), a single asset borrower created under Florida law and exclusively owned by the Defendants. The loan was made to develop luxury condominiums in Florida at a time, as the loan's execution date suggests, when

real estate values were projected to remain strong. In order to protect its interest, First Bank also entered into two separate agreements with the Defendants individually. The parties executed a Guaranty of Payment and Performance ("payment guaranty") under which Richardson and Annecca agreed to be jointly and severally liable to First Bank for Flamingo West's obligations under the loan agreement. The parties also executed a Guaranty of Completion ("completion guaranty") under which Richardson and Annecca agreed to undertake Flamingo West's duty to complete five obligations: (1) diligently begin and complete the project; (2) furnish the labor and materials required to do so; (3) complete the project in a good and workmanlike manner; (4) provide any additional funds required to finish the project; and (5) comply with all other covenants in the loan agreement. The completion guaranty also provides that in case First Bank was itself required to complete the project, the Defendants would be obligated to pay First Bank an amount equal to First Bank's costs that were in excess of any undisbursed funds under the loan agreement.

It was clear by 2008 that the construction project was not proceeding as the parties had anticipated. On September 2, 2008, First Bank filed a two-count complaint in this Court, claiming breach of contract against each Defendant under the payment guaranty following Flamingo West's failure to meet its payment obligations. First Bank, however, had already filed an earlier suit on July 24 in the state court for Broward County, Florida against Florida West, Richards, Annecca, and several other defendants. The Court does not have a complete copy of the original complaint, but all parties appear to agree that it sought to foreclose on the collateral in Florida securing the loan after Flamingo West allegedly defaulted on the loan agreement and also alleged that the Defendants breached their obligations under the completion guaranty. Thus,

First Bank chose to proceed against the Defendants in two different forums, asserting its rights under the payment guaranty in this Court while also seeking relief under the completion guaranty in Florida state court.

The Defendants subsequently moved to stay the proceeding in this Court pursuant to the abstention doctrine set forth in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The Defendants argued, in part, that the question of whether Flamingo West had actually defaulted under the loan agreement – an issue being litigated in Florida – would determine the outcome of First Bank's claims in this case. The Defendants also contended that the defenses against the payment guaranty they were stating in this case had been asserted as defenses against the completion guaranty in Florida. On May 19, 2010, the District Judge agreed with the Defendants that a stay was warranted on the proceedings in federal court under the *Colorado River* doctrine.

Since that time, however, the Florida case has moved forward. On July 7, the state court entered partial summary judgment on First Bank's foreclosure claim against Florida West and several other defendants. The state court found that Flamingo West owes First Bank $10,699,194.11, plus a per diem amount of $3,208.42 for each day after June 16, 2010. The state court also ordered the property involved in Flamingo West's construction project to be sold at a public auction on September 22.[1] The state court's partial summary judgment did not conclude proceedings between the parties in that forum. First Bank's Second Amended Complaint in state court also contains two additional counts against Richardson and Annecca. First Bank seeks

---

[1] First Bank's counsel represented at the hearing that the property had been sold on September 22 for approximately $800,000.

money damages against the Defendants in the amount required to enforce the completion guaranty as well as damages for fraudulently inducing First Bank to enter the loan agreement. Based on the state court's partial summary judgment on Flamingo West's default, First Bank now seeks to lift the stay imposed in this Court by the District Judge.

## II. Legal Standard

Under the *Colorado River* doctrine, a federal court may dismiss or stay a suit when a parallel case is pending in state court and when such a stay would "promote wise judicial administration." *Colorado River*, 424 U.S. at 817. There is a presumption against such actions because, as the Supreme Court has advised, courts have a "virtually unflagging obligation to exercise the jurisdiction given them." *Id.* Courts must undertake a two-step analysis when determining if a stay is warranted under *Colorado River*. First, the court must determine if the federal and state proceedings are actually parallel. *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004). The two suits need not have a "formal symmetry," *id.* at 686; instead, a "suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988) (internal quote and citation omitted). If the state and federal proceedings pass this test, a court must also determine if exceptional circumstances exist to justify a stay. In the Seventh Circuit, ten factors are considered, none of which is determinative in itself:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal

proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Tyrer v. City of South Beloit, Illinois*, 456 F.3d 744, 754 (7th Cir. 2006) (internal citation omitted). The Seventh Circuit has emphasized that the weight to be given to each of these factors should be determined "solely by the circumstances of the particular case – there is no mechanical formula by which to determine when a stay is appropriate." *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1157 (7th Cir. 1990) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

### III. Discussion

In staying this action under the *Colorado River* doctrine, the District Judge found a similarity of issues between the federal and state actions primarily because the Defendants' liability under the payment guaranty is closely linked to the loan default issue being litigated in Florida. The Court also singled out three of the ten exceptional circumstance factors as a basis for staying the federal case: (1) a stay would preserve judicial resources by avoiding piecemeal litigation; (2) the Florida case was filed first; and (3) the state case had moved further along than had the federal litigation. (May 19, 2010 Minute Order.) First Bank's brief motion argues that in light of the state court's judgment against Flamingo West, the stay should now be lifted so that it can proceed against the Defendants under the payment guaranty.

First Bank's argument is not without some merit because Flamingo West's default on the loan agreement directly affects the Defendants' potential liability under the payment guaranty pending in this Court. The stay order, however, noted that it was granting the Defendants'

request "to stay this action until the Florida case has concluded, meaning that First Bank still could proceed in this case after the state court has finished." (*Id.*) The state court action is not finished, however, and the order is silent on whether the stay should remain in place if only a part of the Florida case has been concluded. Thus, the Court must review the *Colorado River* factors to determine if First Bank can proceed with its case in federal court or should wait until the state court has finished all proceedings related to the Defendants.

In considering whether two suits are parallel, courts should examine whether they involve the same parties, similar facts, and related legal issues. *Tyrer*, 456 F.3d at 752. Here, the parties remain the same in both cases.[2] Although the state and federal actions are not as similar as they were when the stay was imposed, the Court believes that issues in both the state and federal proceedings weigh against lifting the stay at this point. In state court, First Bank's Second Amended Complaint seeks damages in an amount equal to the cost of performing the "completion obligations" under the completion guaranty. (Second Amended Complaint at ¶ 38.) The completion guaranty defines this, in part, as a duty to pay a "sum equal to the costs of performing the Obligations [to complete the project] . . . in excess of the undisbursed Loan funds remaining at the time of [First Bank's] request for performance" under the guaranty. (Completion Guaranty at ¶ 4.) First Bank, however, is also seeking at least some of the same construction

---

[2] The Court notes that First Bank assigned its foreclosure judgment to CG Florida LLC, an Illinois limited liability company, on September 14. Accordingly, First Bank may not be the real party in interest to pursue the lender rights in this Court under the payment guarantee. Section 5.3 of the payment guaranty provides that any assignment of First Bank's interest in the guaranty's "obligations" – defined in Section 1.2 as First Bank's right to receive payments under the loan agreement – would make an assignee like CG Florida "entitled to the benefits of this Guaranty to the same extent as if such assignee or transferee were Lender." Federal Rule of Civil Procedure 25(c) provides for transfers of interest, but its applicability here is outside the matter referred to this Court. First Bank remains the named plaintiff in both state and federal court.

costs under the payment guaranty as its seeks under the completion guaranty in state court; it submitted an affidavit supporting its earlier motion for summary judgment in this Court stating that First Bank is seeking construction damages in the amount of $353,233.45. (Rule 56.1 Statement, Ex. 2 at p.6.) Similar evidence will be required to prove the construction damages in both state and federal court, and any construction expenses that the Defendants may be required to pay under the completion guaranty would overlap with the construction costs sought in this Court under the payment guaranty.

Moreover, the Defendants argue that First Bank's fraudulent inducement claim in state court "could overlap with the amounts allegedly owed under the [payment] Guaranty, and potentially render it moot." (Def's. Resp. at 2.) The Defendants do not elaborate on this argument, and First Bank has not replied to it. Nevertheless, the Court agrees with the Defendants' qualified language that the two actions "could" overlap with one another, at least as far as First Bank's potential remedies are concerned. First Bank alleges in state court that the Defendants induced it to loan money to Flamingo West by falsely promising to provide pre-sales contracts for seven of the eleven condominium units. Under Florida law, fraudulent inducement is an independent tort that differs from breach of contract, *Conn. General Life Ins. Co. v. Jones*, 764 So.2d 677, 680-81 (Fla. 1st DCA 2000), but a fraudulent inducement claim requires an election of remedies related to the contract at issue: "rescission, whereby the party repudiates the transaction, or damages, whereby the party ratifies the contract." *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So.2d 306, 313 (Fla. 2000); *see also Dist. Bd. of Trustees v. Morgan*, 890 So.2d 1155, 1160 (Fla. 5th DCA 2004) ("The wronged party may either repudiate the contract and seek rescission, or ratify the contract and seek damages."). The state court

pleading is not clear on what remedy First Bank is seeking, stating only in general terms that First Bank has been injured by its reliance on the Defendants' representations. (Second Amended Complaint at ¶ 68.) First Bank, however, is clearly not asking the state court to rescind the loan agreement and is presumably seeking some form of compensatory damages related to it. (*Id.* at ¶ 70.) If true, and if First Bank prevails, the state court may be required to consider the loan agreement to determine the appropriate remedy, and First Bank's judgment might overlap with its claim against the Defendants under the payment guaranty in federal court. The Court cautions that it is not deciding the nature and scope of First Bank's state court pleading. In the absence of argument on this issue, however, the Court finds that First Bank has not shown that the similarity between the two cases has ceased altogether.

The three exceptional circumstance factors cited by the District Judge continue to warrant keeping the stay in place until the Florida suit is resolved. First Bank filed its state court action before proceeding in federal court. Given the potential overlap of at least some of the Defendants' potential damages in this Court, it would be prudent to have the Florida portion of the dispute between the parties reduced to a judgment before proceeding with the payment guaranty. Moreover, the state court action is nearing trial, and any further delay in this Court appears to be limited. Courts can give special weight to individual factors under the circumstances of a case, *Carr*, 903 F.2d at 1157, and the Court finds the advanced stage of the Florida case a significant reason to keep the stay in place. The resolution of claims against the Defendants in that forum will avoid piecemeal litigation with the federal claims and will avoid the undesirable result of forcing the parties to litigate here while preparing for or engaging in trial in Florida.

## IV. Conclusion

For the foregoing reasons, the Court finds that First Bank has not shown why the stay imposed on this suit under the *Colorado River* doctrine should be lifted, and its Motion to Lift Stay (Dckt. # 59) is denied.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** October 18, 2010